## Bernhard v. Commercial Security Company.

### (Decided October 14, 1919.)

### Appeal from McCracken Circuit Court.

1. Bills and Notes—Validity—Evidence.—The weight of the evidence in this case sustains the contention of appellee that the printed form notes were changed from $225 to $625 before execution and delivery, and such notes are valid.

2. Bills and Notes—Holder—Presumptions.—A holder of commercial paper, regular on its face, is presumed to have received it in due

course, and in a case like this where all the evidence tends to establish the fact that the notes were purchased for value before due in due course, they are not subject to equitable defenses.

JOHN K. HENDRICK for appellant.

EATON & BOYD for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This suit was instituted by the Commercial Security Company, incorporated, of Chicago, Illinois, on two promissory notes of $625.00 each, alleged to have been executed and delivered by George Bernhard to the Partin Manufacturing Company in April, 1916. Bernhard resisted payment upon several grounds: (1) the security company is a foreign corporation with no known place of business in Kentucky, and no authorized agent or agents in this state upon whom process could be served, and therefore without authority to transact business in the state, or to maintain this action; (2) the Partin Manufacturing Company is a foreign corporation with its principal office in the state of Tennessee, and no office or place of business in the state of Kentucky, and no agent upon whom process can or could be served, and therefore not entitled to maintain this action; (4) that the two instruments sued on were fraudulently changed by the Partin Manufacturing Company or appellant Commercial Security Company after they had been delivered by appellant to the agents of the Partin Manufacturing Company and without his knowledge or consent, by raising the sums payable from $225.00 to $625.00, each; (5) there was no consideration for the execution of said notes, or either of them; (6) the contract which was the consideration for the execution of the notes was vicious, against public policy, and void. Appellant in his brief relied upon only two of the grounds mentioned; (a) the fraudulent change of the sums named in the notes from $225.00 to $625.00; (b) the Commercial Security Company did not take and does not hold the two notes in due course and without notice of the fraudulent scheme through which they were obtained. The other contentions set forth above have all been disposed of adversely to appellant in other similar cases before this court.

These notes arise out of one of the usual popularity contest schemes for advertising frequently resorted to by

merchants of this and other states but which schemes have often been condemned by this court, sometimes as fraudulent and therefore void. One can not read the record of this or similar cases without the feeling that the whole scheme should be condemned and the parties left to their own resources. The whole plan has been so carefully thought out and manipulated that one can scarcely put a finger upon the word, sentence or paragraph of the contract, or the act or deed of the parties which renders the contract illegal and void. If we could do so, we would gladly upset the whole scheme and protect unsuspecting merchants, such as Bernhard, from the wiles of designing and skillful promoters.

From the evidence it appears that the Partin Manufacturing Company does not in truth and in fact manufacture anything except schemes and devices to separate unsuspecting persons from their money. It had several predecessors which, in turn, faded from the public view to be followed immediately by a similar concern under a different name but manned by the same crew. Partin, the head of the Partin Manufacturing Company, has been a moving spirit in several other concerns with high sounding titles, all engaged in the same business as the Partin Manufacturing Company. Appellee, Commercial Security Company is also a corporation with headquarters in Chicago, Ill., and it is engaged in buying and handling negotiable paper. While the evidence does not fully establish it, we strongly suspect that the security company through its managers is in a conspiracy with the Partin Manufacturing Company and its managers to take over for collection all negotiable paper which the Partin Manufacturing Company and its predecessors were able by different schemes and through questionable means to obtain from merchants throughout the country. If this fact was established by the evidence, it would afford the court an opportunity to cancel the contract and the notes sued on. While appellant Bernhard insists that such relation exists between the two concerns, the evidence does not quite measure up to the test.

The notes were obtained in this wise: Bernhard is a shoe merchant and has a place of business in Paducah; he had one clerk in April, 1916, who worked in the store; two representatives of the Partin Manufacturing Company entered the store and proposed to sell to Bernhard

an advertising scheme or popularity contest whereby the business of the store could be increased 100 per cent during the next year by using certain advertising and giving away a number of prizes to persons who would boost the business and bring new trade to the store. According to the testimony of these two salesmen who testify for the appellee company, Bernhard agreed to purchase their plan and premiums at the price of $1,250.00, and executed to the Partin Manufacturing Company the two notes sued on for $625.00 each, in payment for the plan and premium; that the regular way to sell the plan was to take the notes for $225.00 and $200.00, each, up to the amount of $1,250.00, but that at the instance of Bernhard they extended the time of payment and divided the price, $1,250.00, into two installments, thus changing their printed form note from the $225.00 to read $625.00, and that these changes were made in the notes before they were signed and delivered by Bernhard to the agents of the Partin Manufacturing Company. Bernhard and his clerk testify that the two agents of the company came into the store, presented their scheme and attempted to sell it to Bernhard; that Bernhard liked the plan and considered purchasing it but that he was told by the agents that they did not know whether they could get him in on the plan in the manner he suggested, paying $625 in two installments, but that they would submit the plan to their main office at Memphis, Tennessee, for its approval; that they presented what they called an application for the plan which Bernhard signed and also a note for $225.00, which he also signed, but that he signed no other paper and did not sign any $625.00 note nor did he authorize or direct either of said agents or any one else to change the amount in the writings from $225.00 to $625.00, or know of such change until some months thereafter when one of the notes came to the bank for payment.

There was some other evidence which corroborated the testimony of the agents. It appears that at the time Bernhard was purchasing the plan, five other merchants in the city of Paducah were doing the same thing and at the same price. The Partin Manufacturing Company, through its agents, agreed to send a man to Paducah to conduct the contest and do the advertising and help carry out the plan. In due course the representative of

the Partin Manufacturing Company, after ample notice, met a representative of each of the six different firms of Paducah at a given place in that city for the purpose of outlining the plan and starting the several contests. Bernhard was in attendance at this meeting and took part. In fact the Bernhard store carried on the contest for some five or six months and finally dropped out. The Partin Manufacturing Company furnished Bernhard some of the prizes mentioned in the contract, and Bernhard used these prizes in boosting his business. This evidence was all considered by the trial judge to whom both questions of fact and law were submitted and, after a consideration of the whole case, entered a judgment in favor of the security company against Bernhard for the full amount of both notes with interest to date. From this judgment Bernhard appeals.

The case turns upon the two questions of fact: (a) were the notes fraudulently increased, (b) and did the security company take the notes for value before due without knowledge or opportunity for knowing that they had been obtained through fraud or misrepresentation? There was no evidence on the part of appellant that the security company knew of any infirmity in the paper or any defense thereto, at the time it became the owner thereof, but all the evidence given on that subject is to the effect that the security company purchased the notes for value before maturity and without any intimation of any infirmity or defect therein. If the trial judge had been convinced that the notes had been altered and the sums payable materially increased, his judgment would have been for the appellant Bernhard; or if it had appeared to that court from the evidence that the security company had taken the notes sued on with knowledge of any infirmity therein, or after the same had become due, or without value, he would have sustained appellant's plea because either of the aforementiond grounds would have been sufficient to have warranted the court in entering a judgment in favor of Bernhard. From the judgment we conclude that the court was of opinion that the weight of the evidence sustained appellee company, and, therefore, awarded judgment in its favor against Bernhard. We are not prepared to say that the court was not fully warranted in so concluding. However this may be, in common law cases, such as this, where questions of

fact ordinarily triable by a jury, are submitted to the court, the finding of the court upon the facts will only be disturbed by this court when it appears to be flagrantly and palpably against the evidence. Entertaining these views, the judgment must be affirmed.

Judgment affirmed.